[No. G012142. Fourth Dist., Div. Three. Jan. 13, 1993.]

MERCURY INSURANCE GROUP, Plaintiff and Respondent, v.
CHECKERBOARD PIZZA, Defendant and Appellant.

**COUNSEL**

Hart, Jakle & Watters, Hart, Watters & Marshall, John A. Marshall and Benjamin S. Cardozo for Defendant and Appellant.

Alan L. Trock for Plaintiff and Respondent.

## OPINION

WALLIN, J.—Mercury Insurance Group filed a declaratory relief action against its insured, Steven Negrette, and his employer, Checkerboard Pizza, seeking confirmation of its decision to deny coverage to Negrette based on an exclusion for business use of a nonowned vehicle. The trial court granted summary judgment in favor of Mercury, and Checkerboard Pizza appeals. We reverse.

### I

Mercury issued an automobile insurance policy to Robert Negrette covering his family cars, including a 1985 Buick station wagon. Other drivers listed were Robert's wife, Tara Negrette, and their three children, Michael, Steven and Sherry. In December 1988, Robert leased a Corsica from MacPherson Chevrolet to use while the Buick was being repaired. On December 15, 17-year-old Steven borrowed the Corsica from his father to use in his job as a deliveryman for Checkerboard Pizza. While delivering pizza, Steven went through a red light and struck an automobile driven by Beverly Matteson. Matteson filed an action for personal injuries against MacPherson Chevrolet, Robert and Tara Negrette, Steven Negrette and Checkerboard Pizza.

Mercury's policy contains an exclusion making it inapplicable "to a non-owned automobile while used (1) in the automobile business by an insured or (2) in any other business or occupation of an insured except a private passenger automobile operated by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith or with an owned automobile . . . ." Based on this exclusion, Mercury defended Robert and Tara under a reservation of rights and filed this action for declaratory relief.[1] The trial court granted summary judgment for Mercury, finding the Corsica was a nonowned automobile and was being used in the business or occupation of an insured, thus falling within the exclusion.

### II

Because there are no factual disputes, we interpret the policy independently of the trial court. (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 35 [221 Cal.Rptr. 171].) ■ Checkerboard Pizza first contends the exclusion does not apply because the rented Corsica was not a "non-owned automobile" as defined by the policy. We disagree.

---

[1]Mercury refused to defend or indemnify Steven; he was defended by Checkerboard's insurer, Sierra Pacific Insurance Company, which settled the case for $750,000.

The policy provides: "Non Owned Automobile means a vehicle of the type listed in (1), (2), (3)[2] below provided [¶] (a) *it is used with permission of the owner of the vehicle and* [¶] (b) the vehicle is not owned by, or registered to, or available for the regular use of, the named insured, an insured's employer, a relative, the named insured's non resident spouse, a person residing with the named insured, a person listed as 'other drivers' in the policy declarations, a corporation or partnership in which the combined ownership interest of the named insured and relatives exceeds twenty per-cent and [¶] (c) the vehicle has never been owned by or registered to the named insured, or any person listed as 'other drivers' in the policy declara-tion and [¶] (d) it is not a motor vehicle used or maintained for the transportation of persons for hire, compensation, or profit or designed, used or maintained primarily for the transportation of property." (Italics in original.)

Checkerboard Pizza argues the Corsica was "available for regular use" by Robert and his family during the period of the rental agreement, thus exempting it from the definition. But the Corsica was only available to the Negrettes during the limited time that the Buick was being repaired. A short term rental agreement does not qualify as "regular use" under the generally accepted definition of that term. As explained in *Interinsurance Exchange* v. *Smith* (1983) 148 Cal.App.3d 1128 [196 Cal.Rptr. 456], a provision in an automobile liability policy covering an auto not listed in the declarations "was intended to provide coverage for occasional use of other cars without requiring payment of additional premiums. For obvious reasons, coverage was not intended to include the *regular* use of other cars because insurance companies would necessarily bear an increased risk without receiving a related increase in premiums. Specifically, the exclusion serves to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured. [Citations.]" (*Id.* at p. 1138.)

### III

■ Checkerboard next argues the exclusion is unenforceable because it treats a permissive user different from a named insured in violation of Insurance Code section 11580.1, subdivision (b)(4).[3] ■ It contends that Robert, as the named insured, would have been covered if he had been driving the Corsica while delivering pizzas because the exclusion contains an exception for a named insured driving a private passenger vehicle.

---

[2]The list referred to is "(1) a private passenger automobile; (2) a utility automobile; and (3) a trailer."

[3]All statutory references are to the Insurance Code unless otherwise specified.

Steven, who was using the Corsica with his father's permission, was excluded from coverage.

Section 11580.1, subdivision (b)(4) requires all automobile liability insurance policies to contain a "[p]rovision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his or her permission, express or implied, and within the scope of such permission . . . ." ██ Thus, to the extent a person using a covered vehicle with the permission of the named insured is excluded from the coverage given to the named insured, the policy provisions will be held invalid. (*Metz* v. *Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45, 58 [109 Cal.Rptr. 698, 513 P.2d 922]; *Jordan* v. *Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 37 [130 Cal.Rptr. 446].) And the named insured need not own the vehicle to have the authority to give his permission; if he has the right and power to control the vehicle, his permission will trigger the application of the mandatory permissive use coverage. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Gong* (1984) 162 Cal.App.3d 518, 526-527 [208 Cal.Rptr. 649].)[4]

██ Mercury contends the exclusion clearly provides coverage will not be afforded to either the named insured or anyone else where a nonowned vehicle is used in the business or occupation of an insured, unless the vehicle is used *as* a private passenger automobile. Because the Corsica was not being used as a private passenger automobile but as a delivery automobile, it argues, permissive use is not an issue.

But the exclusionary language does not contain the preposition "as." It states coverage does not apply to a nonowned automobile used in the business of an insured "except a private passenger automobile operated by the named insured . . . ." A private passenger automobile is defined in the policy not in terms of its use during the incident in question, but in terms of its design.[5] The Corsica was a private passenger automobile; had Robert been delivering pizzas in it, he would have been covered. ██ This being

---

[4]Mercury argues coverage of nonowned vehicles is not statutorily mandated; accordingly if it extends coverage beyond the statutory minimums, it can properly limit that coverage by drafting exclusions. (*Canadian Ins. Co.* v. *Ehrlich* (1991) 229 Cal.App.3d 383, 390 [280 Cal.Rptr. 141].) While this is true as a general proposition, it does not relieve an insurer of its obligation to provide the same level of coverage to a permissive user that it provides to the named insured. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Gong*, *supra*, 162 Cal.App.3d 518.)

[5]"Private Passenger Automobile" is defined in the policy to mean "an automobile designed solely for the transportation of persons and their personal luggage."

so, Steven must also be covered under the mandate of section 11580.1, subdivision (b)(4).

The summary judgment is reversed. Appellant is entitled to its costs on appeal.

Sills, P. J., and Sonenshine, J., concurred.